UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PATRICK K.BATT, | ) | |
| RUDOLPH J. GROM, and | ) | |
| JAMES R. MARTIN, JR., | ) | |
| | ) | |
| Appellants., | ) | |
| v. | ) | Civil Action No. 1:12-cv-00433-AJT-TRJ |
| | ) | |
| MANCHESTER OAKS HOMEOWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| HECTOR DANIEL RODRIGUEZ, | ) | |
| ARADOM IYOB, | ) | |
| LYNN JASON TRUST, | ) | |
| RON BUZON, | ) | |
| TESFAI BERHE, | ) | |
| JONATHAN l. HACKER, and | ) | |
| MANSOUR M. NGASH, | ) | |
| | ) | |
| Appellees. | ) | |

<u>BRIEF OF APPELLEE MANCHESTER OAKS HOMEOWNERS ASSOCIATION, INC.</u>

<u>TABLE OF AUTHORITES</u>

**<u>Cases</u>**

*Blair Constr. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 138 (1997) . . . . . . . . . . . . . 10

*Bohannon v. Riverton InvestmentCorp.*, 1993 WL 945938, at *4 (Va. Cir. Ct. Feb. 1, 1993) . . . 9

*Fuller Fair*, 202 Ala. 430,80 So. 814  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Houston & T.C.R. Co. Wright* (Tex Civ. App.) 195 S.W. 605  . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Indiana Pipe Line Co. v. Christensen*, 188 Ind. 400, 123 N.E. 789 . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Jackson*, No. 08-11179-SSM, 2010 WL 2836161, at *7 (Bankr. E.D. Va. July 16, 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Manning Woodlawn Cemetery Corp.*, 239 Mass. 5, 131 N.E. 287  . . . . . . . . . . . . . . . . . . . . . . . 13

*Meriweather Mowing Serv. v. St. Anne's Belfield, Inc.*, 51 Va. Cir. 517 (Va. Cir. Ct.2000) . . . 9

*N. & W. Ry. Co. v. Rich. Cedar Wks.*, 160 Va. 790, 806, 170 S.E. 5 (1933) . . . . . . . . . . . . . . . 13

*Prospect  Dev. Co. v. Bershader*, 258 Va. 75, 86, 515 S.E.2d 291, 297 (1999) . . . . . . . . . . . . . 10

*Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Supervalu, Inc. v. Johnson*, 276 Va. 356, 367, 666 S.E.2d335, 341-42 (2008) . . . . . . . . . . . . . 10

*Sebree Huntingdon Water Supply Co.*, 72 Pa.Super.Ct. 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>Rules</u>**

Fed. R. Civ. P. 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Bankr. P. Bankruptcy 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF CONTENTS

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.  There Was Substantial Evidence to Support the Findings of the Bankruptcy Court . . . . . . . 12

II.  This Is Not a Fraud During a Land Sale and Damages Should Not be Measured
     As They Would  Between Buyer and Seller  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. The Testimony of Appraiser Diane Quigley was Valuable and Probative . . . . . . . . . . . . . 15

IV. One of the Appellants Admitted under Oath That He had Stated He Would Consider
     paying $50,000 for Just One Reserved Parking Space  . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.  The Appellants incorrectly claim that the HOA Website is Insufficient Evidence of
     Damages for Garage and Non-Garage Unit Owners  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

STATEMENT OF CASE

This bankruptcy appeal is the result of a four year war between three homeowners, Appellants here, Patrick K Batt, Rudolph J. Grom and James R. Martin ("the Appellants") and almost all other homeowners in the Manchester Oaks Townhouse development in Fairfax County over a decision in 1988, made by the original developer of the project, to allocate parking spaces between the 30 townhouses that had garages and the 27 that did not. Under that parking plan the garage owners were to park their cars in their garages and on their driveways. The non-garage owners were to have two reserved parking spaces on the street.

For more than 20 years the builder's parking plan had been accepted by the homeowners. However, after living in the project for almost 20 years Batt and Grom, together with Martin, a relatively recent homeowner in the project, all of whom had garages, filed suit to obtain access to the street parking areas that had be reserved to the non-garage owners.

On the date of filing this chapter 11 case, no judgment order had not been entered. The court was awaiting a final hearing on claim of the Appellants for attorney's fees in that matter. This bankruptcy case was filed to protect the 54 non-plaintiff homeowners from entry of judgement against the homeowners association by the three plaintiff homeowners, who were about to be awarded more than $200,000 in damages and attorney fees. This was a bill the Association could not pay.

After a lift stay hearing, the Bankruptcy Court entered an order modifying the automatic stay to allow the Fairfax Circuit Court litigation to proceed (Docket Entry 33) though entry of

judgment and prosecution of post judgment motions and appeals, that provided in part:

> however, no process shall issue or other action be taken (except for the filing of a proof of claim and appropriate pleadings in this court) to enforce any monetary judgment as a liability of the debtor, nor shall any such judgment become a lien against the debtor's real property, except upon further order of this court, or unless the debtor's bankruptcy case is dismissed or closed without confirmation of a plan.

On appeal of the final award of the Fairfax Circuit Court of $57,177.50 in damages and $188,840.69 in attorney fees, the Virginia Supreme Court granted an appeal, and in its decision it reduced the damage awards granted by Circuit Court to Batt and Grom each by $25,000 denying them compensatory damages for alleged diminution in value in their real property; but affirmed their $2,355 in compensatory damages for assessments paid by them over the years for the common area parking spaces they were prevented from using. Similarly the court reduced the damages of $1,762,50 awarded by the Circuit Court to Martin to $705,00.

The Supreme Court, however, affirmed the Circuit Court's finding that the parking policy of the HOA violated its declaration, and the Circuit Court's award of $188,840.69 to Batt and Grom for their attorney fees.  Subsequently, on remand the Circuit Court awarded them and an additional $29,000. To comply with the Supreme Court decision, the HOA board eliminated all reserved parking, and parking is now on a first come first served basis for all homeowners.

As the bankruptcy court docket reveals, in addition to the Appellants,  a total of 25 garage and non-garage homeowners filed proofs of claims in the bankruptcy.  The garage owners claimed damages similar to those claimed by the Appellants, while the non-garage owners filed claims based on the damage they suffered as a result of the victory of the Appellants resulting in

the loss of their reserved parking spaces. The non-garage owner felt wronged, since the builder or

their seller or their real estate agent had told them two parking spaces were reserved to their

townhouses.  Moreover the Debtor had  marked on the curbs to these spaces were reserved for

their unit, and their exclusive use of these spaces had been enforced the Debtor,  acknowledged

by all the other  homeowners as part of the appurtenances to their property for some for 20 years

or more.

      Within the bankruptcy Appellants attacked almost all the other claims (Docket items 78-

119), filed by the other homeowners claiming that their proofs of claim were false and

fraudulent.  Every objection contained the following language

> Shortly after the petition was filed, the Debtor HOA's bankruptcy counsel, along
> with the president of the HOA's Board of Directors addressed the HOA
> membership at an association meeting. In an egregious breach of their fiduciary
> duties, they announced that all HOA members should file false claims in this
> bankruptcy case. They told the association members that if all members filed false
> proofs of claim seeking the same amount that was awarded to the Creditors,it
> would dilute the Creditors' legitimate claims and allow the HOA to reduce its
> liability to the Creditors by paying all unsecured claims at one cent on the dollar,
> thereby gerrymandering votes and reducing the amount of the Creditors' (and
> other creditors') legitimate claims to a nominal amount and escape from payment
> of these legitimate obligations.[1]

      When this first effort only resulted in three claims being withdrawn (Docket Entries

121,123,and 124), the Appellants filed a second round of motions (Docket Entries 125-126)

threatening all those who had filed claims with similar sanctions for filing their claims.  Each

claimed the homeowners were subject to sanctions "based on the false Proof of Claim filed by

_____ (Proof of Claim No.\_\_) in this matter, and respectfully request an award of their

---

[1] All of these allegations were later proven to be untrue, by a tape recording of the
meeting, .

reasonable attorneys' fees incurred in objecting to this Proof of Claim."

Each homeowner was provided with the following notice as part of their sanction motion

NOTICE

Pursuant to Rule 9011(c) of the Federal Rules of Bankruptcy

Procedure, a Motion for Sanctions must be served upon the

offending party twenty-one (21) days before it is filed with

the Court. This gives the offending party an opportunity to

withdraw the improper filing. The Moving Creditors are

objecting to the Proof of Claim you filed in this case. You

therefore have twenty-one (21) days from the date on the

Certificate of Service (below)—plus an additional three

days because these papers were served by mail (see Fed.

R. Bankr. P. 9006(f))—to file with the Court a notice of

withdrawal of the Proof of Claim you filed in this case.  If

the Proof of Claim is withdrawn during this time, you will

not be subject to any sanctions based on your

filing of the Proof of Claim.

As a result of this aggressive effort to intimidate the other homeowner claimants,

almost all of whom were not represented by counsel, all but four of the claimants withdrew their

claims. (Docket Entries 158, 159, 160, 161,162,163, 164, 165, 169, 171, 174, 177, 178. 181,

184,185 and 186).

Subsequently, at an evidentiary hearing the court determined that the claims of the

remaining claimants were "facially valid" and permitted those who had withdrawn their claims to

refile, only a few did and litigated the matters before the court.

> Lawyers are highly trained professionals and are expected to exercise
> professional judgment. They are not expected to follow-up every random
> thought that pops into their heads. And when they do, billing judgment
> dictates that it not be billed.
>
> The time records reflect that Mr. Range and Mr. Ashby made a mountain
> out of molehill. They turned over every stone they could find. They fully
> vetted every idea. They re-created the credit union's six accounts. This was
> a basic case that got out of control.

In re Jackson, No. 08-11179-SSM, 2010 WL 2836161, at *7 (Bankr. E.D. Va. July 16,
2010).

Much the same could be said of this dispute over parking spaces which  generated

more than $217,000 in attorney's fees but $5,515.00 in damages.  The case is clearly now

more about attorney's fees than it is about the clients' recovery.  The underlying litigation

was contentious, to be sure, but that is beside the point now.  The case is over.  The

primary concern of the Bankruptcy Court has been the viability of the estate and whether

the ability of the Debtor to devise a confirmable plan will be so compromised by the

attorney fee award that the only feasible alternative is liquidation

<u>ARGUMENT</u>

Bankruptcy Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The Notes of the Advisory Committee on rules for this rule in 1983 and when it was amended in 1987 state that it accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P.

The Judge Kenney  heard two days testimony and review numerous exhibits and allowed

the claims of the remaining non-garage owners, Hector Daniel Rodriguez (Claim No. 10),

Aradom Iyob (Claim No. 17), Alice Wong (Claim 18), the Lynn Jason Trust (Claim No. 19),

Ron Buzon (Claim 20), Tesfai Berhe (Claim No. 21), Jonathan L. Hacker (Claim No. 24) and

Monsour M. Negash (Claim 25).

As the Bankruptcy Court found in its well written Memorandum Opinion that

> Each of the Non-Garage Owners purchased their units in reliance, at least in part, on the Parking Policy.[2] It was made apparent to each of them, by the HOA, that there were two allocated spaces for their homes. This was the result of the painting on the curbs, the language of the Rules and Regulations, quoted above, and the fact that there were signs posted, warning violators that their vehicles would be towed, should they park in the designated spaces. None of the Non-Garage Owners were given any reason to believe that the Parking Policy would, or could, change at any time in the future. All of the Non-Garage Owners testified adamantly that they would not have purchased their townhomes, had the homes not

---

[2] *The court found that the same informal policy was formally adopted by the Association in 1997.*

> been allocated parking spaces, or had they been of the
> understanding that the policy could change at some time in the
> future. Sometime in 2009, the Association attempted to ratify the
> Parking Policy by adopting an Amendment to Declaration. Each of
> the Garage Owners[3] voted in favor of the proposed Amendment.
> Objecting Parties' Exhs. B-R, B-S, & B-T.
>
> * * *
>
> .After seven days of trial, the Circuit Court: (a) ruled, for a variety
> of reasons, that the 2009 Amendment was ineffective and was
> never properly adopted by the required super-majority of the
> Manchester Oaks homeowners; (b)overturned the Parking Policy,
> ruling that it was inconsistent with Section 2.3.18 of the
> Declaration....

Memorandum Opinon, p. 3-4.

In the court below, the Appellants in attacking non-garage owners' claims had  asserted

that these claims were not protected under the law of equitable estoppel, because there were no

intentional misrepresentations made to them, and that they did not prove their damages.

However the Bankruptcy court correctly found that

...Objecting Parties' reliance on equitable estoppel cases is misplaced.

Equitable estoppel under Virginia law usually is employed defensively, not as a
separate cause of action. It may, for example be asserted in response to a claim of
the statute of limitations. But, it does not itself constitute a cause ofaction. See
Meriweather Mowing Serv. v. St. Anne's Belfield, Inc., 51 Va. Cir. 517 (Va. Cir.
Ct.2000) ("[E]quitable estoppel usually operates as a shield, as opposed to a
sword, 'and it does not of itself crate a new right or give a cause of action; rather it
serves to prevent losses otherwise inescapable and to preserve rights already
acquired'" (quoting Bohannon v. Riverton InvestmentCorp., 1993 WL 945938, at
*4 (Va. Cir. Ct. Feb. 1, 1993))).

Memorandum Opinion, p-13.

---

[3]. *Garage Owner here refers to Batt, Grom and Martin.*

Instead the Bankruptcy Court found the non-garage owners claims to be subject to the law of  constructive fraud. In its opinion the court states:

> To prevail on a constructive fraud claim, a [claimant] must show by clear and convincing evidence that the other party negligently or innocently made a false  representation of material fact, and that the [claimant] suffered damage as a result of his [or her] reliance upon that misrepresentation." Supervalu, Inc. v. Johnson, 276 Va. 356, 367, 666 S.E.2d335, 341-42 (2008) (citing Prospect Dev. Co. v. Bershader, 258 Va. 75, 86, 515 S.E.2d 291, 297 (1999); Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998); Blair Constr. v. Weatherford, 253 Va. 343, 346, 485 S.E.2d 137, 138 (1997)). The statement must be one of existing fact, or of a present intent not to perform; a promise of future action will not support a claim of constructive fraud. Supervalu, Inc. v. Johnson, 276 Va. at 368, 666 S.E.2d at 342.

In its effort to distinguish this case from one of the cases sited by the Bankruptcy Court, the Appellants attempt to mislead this court.

The standard is that the claimants had to show by clear and convincing evidence that the other party either negligently or innocently made a false  representation of material fact, and that the [claimant] suffered damage as a result of his [or her] reliance upon that misrepresentation.

The example given by the Appellants in their brief to distinguish this case from the case of *Prospect Development Company v.  Beershader , 256 Va. 75, 515 S.E. 2d 291 (VA 1999)* was the argument that what was represented to the home buyers was  "That the parking policy was permanent **and would not be changed**" (a promise of further action).   They correctly state that requirement of constructive fraud is that the misrepresentation must be one of existing fact, since a promise of future action will not support a claim of constructive fraud.  In *Bershader* the misrepresented existing facts were "that percolation tests had been performed on Outlot B and

that those tests were not successful" (515 S.E.2d at 297), which both later proved to be untrue.

Here the key misrepresentation was made to the homeowners at the time of purchase, it was that each of the non-garage units had two parking spaces in front of their houses. The claimants testified that they were told this by their sellers, their real estate agents and by the acts of the HOA by painting of curbs, clearly identifying that certain parking spaces belonged to certain lots, and by  posting of signs and other documents that indicated that the restriction of those spaces to those lots was legally enforced and enforceable by the Association.

The Appellants want to frame this misrepresentation as one of the future enforceabilty a parking policy which was wrongly drafted, such that the meaning and legal effect of the policy took a trial court seven days of testimony to parse.  Instead the actual misrepresentation was one of concrete fact on which the non-garage owners relied to their detriment: that each non-garage townhouse had  a right or appurtenance to the use of two parking spaces incidental to the real property and passing in possession with it.

This misrepresentation is much the same as if the owners, agents and association, had told the buyers of a property at the time of purchase  that the property had a valuable easement, but that representation later proved to be false because the drafting or recording  of the easement proved flawed, and as a result the valuable easement became unenforceable and as a result the value of the entire property was diminished.

## I.  There Was Substantial Evidence to Support the Findings of the Bankruptcy Court

Since the Appellants chose to prove their claim objections by first calling the claimants, who testified again to support their own claims during the two day trial, the Court effectively heard the non-garage owners twice.  The testimony of each home owners was compelling.

As the court found

> Each of the Non-Garage Owners testified that his or her property
> was devalued by roughly $70,000 as a result of the loss of the two
> spaces. All of them testified that this was an approximately ten
> percent (10%) diminution in value, per parking space. Mr. Berhe
> testified that this was his "best estimate" of his damages. Mr. Iyob
> referenced the number of square feet of his home, versus the
> number of square feet of the parking spaces. Ms. Trust testified,
> convincingly, that her estimate of damages was based on "common
> sense," and "quality of life." Mr. Wong testified that he believed
> that he paid a premium for his townhome, based on the allocated
> parking spaces. A number of the homeowners testified to the great
> inconvenience of now having to search for a space in the visitors'
> parking, or, failing that, having to park out on the street and carry
> their groceries (not to mention their children) from the street to
> their homes. The loss of value, as a result of the loss of the parking
> spaces to these homeowners, has been demonstrated to the Court's
> satisfaction.

Memorandum Opinion, p.15

The homeowners also presented the testimony of a qualified real estate appraiser

Dianne Quigley, who testified on behalf of claimants. She testified that, all other things being

equal, we should expect to see a ten percent (10%) difference in value between a townhome that

had one parking space, versus the same townhome that has no assigned parking space. Ms.

Quigley did not testify as to the difference between townhomes that have two parking spaces

versus townhomes that have no parking spaces, since she could find insufficient data to make

such an assessment.

The court said in its Memorandum Opinion , that it "accepted the homeowners' testimony

as to the diminution in value to their properties, and views the Quigley Report as something of a

backup, a professional assessment of the reality of the losses suffered." (Memorandum Opinion,

p. 16)

*Page 13 of 23*

**II.     This Is Not a Fraud During a Land Sale and Damages Should Not be Measured as They Would  Between Buyer and Seller**

The Appellants cite language in the *Bershader* opinion stating that the measure of damages in a commercial transaction, where the person who acquired the property had been defrauded by false representations, should be the actual value of the property at the time the contract was made and the value of the property would have possessed had the representation been true.   This fact situation is not this case.

These damages were not those between buyer and seller, but rather the damages were incurred by the owner of property due to  acts or negligence of a third party, who was not a party to the land purchase commercial transaction.  In this situation the defendant does not get to back date the loss to the date of acquisition to value the damages.

In a fire case, the Virginia Supreme Court long ago  held as it still does that:  "The proper measure of damages for permanent injury to real property is the diminution in the market value of the property; * * *." *N. & W. Ry. Co. v. Rich. Cedar Wks.*, 160 Va. 790, 806, 170 S.E. 5 (1933), citing 8 R.C.L. section 44, page 481. In support of this proposition half a column of authorities are cited. See, also, the following cases: *Fuller Fair*, 202 Ala. 430,80 So. 814; *Indiana Pipe Line Co. v. Christensen*, 188 Ind. 400, 123 N.E. 789; *Manning Woodlawn Cemetery Corp*., 239 Mass. 5, 131 N.E. 287; Sebree Huntingdon Water Supply Co., 72 *Pa.Super.Ct.* 553; *Houston & T.C.R. Co. Wright* (Tex Civ. App.) 195 S.W. 605; *Gulf Pipe Line Co. Hurst* (Tex. Civ. App.) 230 S.W. 1024; *Thompson Illinois Cent. R. Co.*, 191 Iowa 35,179 N.W. 191.

The measure of damages in a negligence action is that amount necessary to compensate the injured party for the damages proximately caused by the tortious conduct. *Lochaven Co. v.*

*Master Pools by Schertle, Inc.*, 233 Va. 537, 541, 357 S.E.2d 534, 537 (1987).

The Virginia Supreme Court has also held that a jury may properly "assess damages for defendant's conduct in diminishing the value of plaintiffs' properties, for continuously interfering with the enjoyment of that property, and for causing material disturbance or annoyance to plaintiffs in their use and occupation of the property." *National Energy Corp. v. O'Quinn*, 223 Va. 83, 91, 286 S.E.2d 181, 186 (1982).

## III. The Testimony of Appraiser Diane Quigley was Valuable and Probative

A last word about the homeowners' expert witness. Appraiser Diane Quigley has been an independent fee appraiser in Northern Virginia since 1987, she is presently the instructor for the Northern Virginia Association of Realtor where she has teaches Uniform Standards of Appraisal Practice and appraisal fundamentals. She has taught appraisal science since 1986.

She was properly designated in this case and was qualified as an appraisal expert before the court in this case without objection from the Appellants counsel. She testified she had done "Thousands"[4] of appraisals in the Northern Virginia area. Ms. Quigley testified she had performed a study and was able to determine from her study that there was a 10% difference in value in townhouses with one reserved parking space than those with two.

Her testimony was probative as to the real value differential between townhouse have one parking space and those having two. The homeowners properly relied on her opinion as to the value of a reserved parking space in Fairfax County, and it should be stressed that no contrary opinion was offered by the Appellants.

---

[4]. January 26, 2012 Transcript, p. 249.

**IV.**    **One of the Appellants Admitted under Oath That He had Stated He Would
         Consider paying  $50,000  for Just One Reserved Parking Space**

During the cross examination of Mr. Batt by Mr. Brown the attorney for the non-garage

owners, the following testimony was given by Mr. Batt (Transcript, January 26, 2012: pp 215-

224:

Q Have you ever testified in court as to what your

24 estimation of the value of a parking spot, reserved parking

1 A You mean in the Fairfax County Court?

2 Q Any court.

3 A 7th of July in 2010. Yes.

4 Q What did you feel like a reserved parking spot was

5 worth?

6 A I don't recall what I said at that time.

7 Q Well, let me just refer you to the transcript here

8 and ask you if this properly reflects your testimony.

9 Question by Mr. Bennett. That was your attorney in the state

10 court, one of your attorneys. "Are you aware of any values

11 that the HOA has attributed to the parking spaces?" Answer:

12 "Of course. I read the HOA website. In the HOA website they

13 say the parking spaces are worth 50 to 70 thousand apiece and

14 I'm sure that they have some reason why they said that, and

15 I would agree that they would be."

16 A I don't know about the last part where I said I

17 agreed they would be. It's certainly true that the website

18 apparently said that - and I believe if you look on the

19 website it says some people have said they could be worth

20 up to 50 to 70 thousand dollars apiece. I don't think it

21 says that they are 50 to 70 thousand dollars apiece or that

22 they had an appraisal at the time they said that.

23 Q I'm just -

24 A I don't know.

25 Q I'm just recalling your testimony.

1 A I'm not looking at my testimony, sir.

2 Q You don't have any reason to dispute your

3 testimony, do you?

4 A Ah -

5 Q And did you also make the statement, I would be

6 willing to consider buying one of the parking spaces -

7 A Yes.

8 Q - in that price range for $50,000? Did you say

9 that?

10 A I don't know. Did I? You're looking at the

11 testimony; I'm not.

12 Q Well, I'm asking you if you recall saying that.

13 THE COURT: Mr. Brown, can you refer him to the

14 transcript? Which exhibit are we at now?

15 MR. BROWN: I'm not sure. It's in Tom's - it's

16 pages 155 and 156 of the 7/7/2010 hearing.

17 MR. STANTON: Exhibit D, Your Honor.

18 THE WITNESS: Which one is that?

19 THE COURT: It's a smaller binder. It says,

20 "Debtor's Claim Hearing Exhibits."

21 THE WITNESS: Yes, sir. Okay.

22 THE COURT: Exhibit D you said or "E?"

23 MR. BROWN: "D," Your Honor.

24 THE COURT: "D." And page?

25 MR. BROWN: The bottom of 155 and the top of 156.

1 THE COURT: Okay. Can you look at that, Mr. Batt,

2 please?

3 THE WITNESS: Yes, sir.

4 (Pause.)

5 THE WITNESS: Well, I might have been willing to

6 consider buying a parking space in that range. And what I

7 said was: "And I'm sure they have some reason why they said

8 that. I would agree that they would be - some reason why

9 they said that, and I would be willing to consider buying a

10 parking space." I would certainly be willing to buy a

11 parking space and I would now. Would I pay $50,000 for

12 it? I don't know.

13 I can tell you that there's two units that just

14 sold in Manchester Oaks. One unit sold with no reserved

15 parking but it was a non-garage unit and it sold for

16 $360,000. That was I think in December.

17 There was an earlier unit that sold in Manchester

18 Oaks, maybe in October or September. It was a garage unit.

19 It sold for $370,000.

20 So, I wouldn't say that having two reserved

21 parking spaces - if you said that the non-garage unit

22 that sold without any reserved parking space for $360,000

23 would have sold for $430,000 if it had two reserved parking

24 spaces, I'd say: Gee, that would be great. I would sell my

25 house tomorrow because no house in Manchester Lakes, in

1 Manchester Lakes let alone Manchester Oaks has sold in that

2 price range in the last three or four years.

3 BY MR. BROWN:

4 Q So, but -

5 A So, you know, the experience that I have today is

6 that two - like I said, a non-garage unit with no parking

7 spaces sold for 360. A garage unit sold for 370. So, I'd

8 say that those are comparable ranges.

9 Would I be willing to buy a parking space?

10 Absolutely. Would I give $70,000 for one parking space?

11 Probably not.

12 Q But on July 7, 2010 when you were testifying in

13 state court, trying to make your claim against the

14 association, you said you would pay 50,000 for a space?

15 A I didn't say that. I said I would consider

16 buying a parking space.

17 Q For $50,000.

18 A I said I would consider buying a parking space.

19 There's a whole lot of difference between saying I would

20 consider buying a parking space and here's my check.

21 Q You said, I would be willing to consider buying

22 one of the parking spaces in that price range, for $50,000.

23 A If you -

24 Q At that time, you thought a parking space was

25 worth around $50,000; didn't you?

1 A I didn't do a whole lot of calculations, to sit

2 down with a real estate broker and figure out that, yeah,

3 here's my check for $50,000.

*Page 20 of 23*

```
4 Q I understand that. But you thought at that time

5 50,000 was a fair price for a parking space; didn't you?

6 A No, I didn't.

7 Q Well, why didn't you say I would be willing to

8 pay in the price range of $5,000?

9 A I said I would be willing to consider buying a

10 parking space in that price range.

11 Q Of fifty -

12 A That's what I said. That's what I said.
```

## V.  The Appellants incorrectly claim that the HOA Website is Insufficient Evidence of Damages for Garage and Non-Garage Unit Owners

The non-garage owners, who are the subject of this appeal, were not parties to that litigation and are not bound by any findings in that proceeding or appeal. Moreover, the Website has substantial probative value in this case because both Batt and Grom stipulated through their attorney in the Fairfax Circuit Court Case to the accuracy of values of between $50,000 and $70,000 for each reserved parking space, and urged this value on the Fairfax Circuit Court.

This is confirmed in the Transcript of January 25, 2012,  at pages 163 line 6 to page 170 line 3 and the stipulated Exhibit C.

<u>CONCLUSION</u>

For the foregoing reason, Appellee Manchester Oaks Homeowners Association, Inc.

requests that the February 29, 2012, Order of the Bankruptcy Court be affirmed.

Respectfully submitted,

/s/ Thomas J. Stanton
Thomas J. Stanton, VSB # 6107
Stanton & Associates, P.C.
221 South Fayette Street
Alexandria, VA  22314
Telephone:  (703) 299-4445
Facsimile:  (703) 548-6603
Counsel for Appellee
Manchester Oaks Homeowners Association, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing memorandum was served this 17th day of January, 2012, by electronic means on counsel through the Court's automated filing system, and by sending a copy by regular mail, first-class postage prepaid, to the following:

David Ludwig, Esquire
Dunlap, Grubb & Weaver, PLLC
199 Liberty Street, S.W.
Leesburg, VA  20175

Bennett A. Brown, Esq.
The Law Office of Bennett A. Brown
3905 Railroad Avenue, Suite 200N
Fairfax, VA 22030

/s/ Thomas J. Stanton
Thomas J. Stanton (VSB # 6107)
Stanton & Associates, P.C.
Alexandria, VA 22314
Telephone:  (703) 299-4445
Facsimile:  (703) 548-6603
Counsel for Appellee
Manchester Oaks
Homeowners Associantion, Inc.