UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATRICK K. BATT, ) | |
| RUDOLPH J. GROM, and ) | |
| JAMES R. MARTIN, JR., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-433 (AJT/TRJ) |
| ) | |
| MANCHESTER OAKS HOMEOWNERS ) | |
| ASSOCIATION, INC., ) | |
| HECTOR DANIEL RODRIGUEZ, ) | |
| ARADOM IYOB, ) | |
| ALICE WONG, ) | |
| LYNN JASON TRUST, ) | |
| RON BUZON, ) | |
| TESFAI BERHE, ) | |
| JONATHAN L. HACKER, and ) | |
| MANSOUR M. NEGASH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The appellants are members of the Manchester Oaks Homeowners Association ("the HOA") who have appealed the decision of the United States Bankruptcy Court for the Eastern District of Virginia to allow, over their objections, the claims of eight other members of the HOA, the creditor- appellees. [Doc. No. 1]. Briefly stated, the appellants claim that the Bankruptcy Court erred in concluding that the creditor-appellees proved a valid claim for constructive fraud. Upon consideration of the record on appeal, the memoranda filed in support thereof and in opposition thereto, the arguments of counsel at the hearing on March 8, 2013, and for the reasons stated in this Memorandum Opinion, the Court concludes as a matter of law that the creditor-appellees did not establish a claim for constructive fraud and for this reason, the

decision of the Bankruptcy Court is reversed and remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

The Bankruptcy Court made the following findings of fact, which are essentially undisputed:

The appellants and creditor-appellees all reside in the Manchester Oaks community in Fairfax County, Virginia. Each owns a townhome at Manchester Oaks and is therefore a member of the HOA. The appellants own townhomes with a garage and the creditor-appellees own townhomes without a garage, but with additional living space in lieu of a garage. Like all members of the HOA, the creditor-appellees purchased their townhomes "explicitly subject to the easements, recorded conditions, restrictions and rights of way of record contained in instruments forming the chain of title to the property conveyed herein and to matters visible upon inspection." *See, e.g.,* Appellants' Ex. AY. The "Corrected" Deed of Dedication and Subdivision Deed of Easement, recorded in the Fairfax County land records ("the Deed"), granted the individual townhome owners "an easement of common use and enjoyment" in the Common Areas. In September, 1989, the developer of the Manchester Oaks subdivision recorded a Declaration of Covenants, Conditions and Restrictions for Neighborhood Five (the "Declaration"). The Declaration established the HOA, which is comprised of the property owners, and set forth the rights and obligations of the HOA. The individual deeds to each of the owners' properties incorporate by reference the HOA's recorded Declaration. *Id.* The Declaration also reiterates the easement of common use and enjoyment, first established in the Deed, and permits the HOA "[t]o accept title to the Common Area and to hold and administer the Common area for the benefit and enjoyment of the Owners and occupants of Lots." Declaration

¶ 2.3.14. Important to this case is that the Declaration also authorizes the HOA "[t]o make and enforce regulations governing the use of the Common Area," *id.* ¶ 2.3.15, and specifically vests the HOA with authority to

> ...make and enforce rules and regulations governing the use of parking areas within the Common Area, specifically including the right to designate a maximum of two parking spaces within the Common Area for the exclusive use of the Owner of each Lot; <u>provided, however, that nothing herein shall require the Association to make any such designations or to ensure that the parking spaces are available for the use of any particular owner of a Lot, nor shall the Association be required to supervise or administer the use of the parking lots located within the Common Areas.</u>

Declaration § 2.3.18 (emphasis added).

In October, 1997, the HOA formally adopted a parking policy, which was identical in all material respects to the previously informal parking policy allocating two parking spaces to the townhomes that did not have garages and no spaces to those townhomes that had garages and driveways ("the Parking Policy"). Thereafter, the HOA issued a Handbook of Rules and Regulations (the "HOA Handbook") that enjoined homeowners and guests from "[p]arking in a reserved space without the consent of the resident to whom the space is assigned." HOA Handbook § 3.7, ¶ L. The HOA Handbook also stated that the HOA's Board "may designate reserved and guest parking areas <u>within its discretion</u>." *Id.* (emphasis added). Until 2011, the HOA, through its Board, maintained the Parking Policy as discussed above. In addition, in order to mark the reserved parking spaces allotted to a particular townhome under the Parking Policy, the HOA painted the curbs in front of the non-garage townhomes with either the last two digits of the street address for the property or the lot number and also posted signs warning that any offending vehicles would be towed. There is no evidence in the record that the HOA ever acted to enforce the parking policy apart from these designations and forms of notice.

In 2009, following certain judicial rulings involving other homeowners associations,[1] the HOA adopted an Amendment to Declaration (the "2009 Amendment"), which again formally adopted the Parking Policy. Thereafter, on July 29, 2009, the appellants filed an action in the Circuit Court of Fairfax County, alleging that the 2009 Amendment, and the Parking Policy it adopted, was in violation of the Declaration, and therefore a violation of the Virginia Property Owners' Association Act, Va. Code. § 55-515(A). *See Batt v. Manchester Oaks Homeowners Ass'n, Inc.*, 80 Va. Cir. 502 (2010). On August 8, 2011, the Circuit Court issued its final judgment in favor of the appellants, ruling that the 2009 Amendment was procedurally ineffective and the Parking Policy adopted by the 2009 Amendment was inconsistent with Section 2.3.18 of the Declaration, and awarded the appellants compensatory damages and attorneys' fees pursuant to Virginia Code § 55-515. *Id.* Following the final judgment of the Circuit Court, the HOA rescinded the Parking Policy, thereby making common area parking available to all residents without restrictions. Jan. 26, 2012 Hr'g Tr. at 131, 214. The HOA also appealed to the Virginia Supreme Court, which on September 14, 2012, reduced the compensatory damage awards, but otherwise affirmed that the Parking Policy violated the Declaration, as well as the award of attorneys' fees. *See Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 430-31. 732 S.E.2d 690, 703 (2012). The case was remanded to the Circuit Court for a determination of additional attorneys' fees incurred in the appeal. *Id.* On January 20, 2011, the HOA Board filed for bankruptcy under Chapter 11.[2]

---

[1] For example, in *White v. Boundary Ass'n, Inc.*, 271 Va. 50, 624 S.E.2d 5 (2006), the Supreme Court of Virginia, construing a declaration nearly identical the HOA's Declaration, held that any change to the use of the common areas could be effected only under the circumstances stated in the declaration or by a vote of 65 percent of the unit owners. *See also Sully Station II Cmty. Ass'n v. Dye*, 259 Va. 282 (2000).

[2] The HOA claimed bankruptcy based on its inability to pay the damages and attorneys' fees awarded by the Circuit Court initially and filed its bankruptcy petition after it failed to post a

In the HOA's bankruptcy action, twenty-five proofs of claim were filed by townhome owners with garages and without garages; and the appellants objected to nearly all of these claims. On February 29, 2012, the Bankruptcy Court, after an evidentiary proof of claims hearing, issued an order allowing eight of the proofs of claims, all of which were filed by the owners of townhomes without garages who had previously benefitted from the rescinded Parking Policy. *See In re Manchester Oaks Homeowners Ass'n,* 469 B.R. 631, 642 (Bankr. E.D. Va. 2012). Specifically, the Bankruptcy Court held that the creditor-appellees had adequately proven claims for constructive fraud against the HOA and were entitled to recover damages based on that constructive fraud. The appellants then timely filed this appeal.

## II. STANDARD OF REVIEW

On appeal, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. This Court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Hartford Sands Inc.,* 372 F.3d 637, 639 (4th Cir. 2004). "In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts." *In re Phinney,* 405 B.R. 170, 175 (E.D. Va. 2009) (citing *Gilbane Bldg. Co. v. Fed. Reserve Bank,* 80 F.3d 895, 905 (4th Cir. 1996)).

## III. Analysis

In a bankruptcy case, a proof of claim is "deemed allowed" unless a party in interest objects. *See* 11 U.S.C. § 502. A proof of claim executed and filed in accordance with the

---

supersedeas bond in connection with its appeal to the Virginia Supreme Court. Following the filing the HOA's bankruptcy, the Bankruptcy Court lifted the automatic stay and the state court litigation continued.

Bankruptcy Rules "constitute[s] *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). When a claim is undisputed, this rule allows for efficient resolution by the bankruptcy court "without the formalities of a complaint, answer, affidavits, and summary judgment, which might arise in the context of a federal civil proceeding." *In re Landbank Equity Corp.*, 973 F.2d 265, 269 (4th Cir. 1992). However, if an objection is filed, the bankruptcy court is required to determine the amount and validity of the claim. *See In re Varona*, 388 B.R. 705, 713 (Bankr. E.D. Va. 2008). "For this reason, the objecting party has the initial burden of presenting sufficient evidence to overcome the *prima facie* evidence of the filed proof of claim. Once the party has done so, the burden of proof shifts to the creditor to establish the amount and validity of its claim." *Id.* (citations omitted). If the objecting party carries its burden, "the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *In re Hartford Sands Inc.*, 372 F.3d at 640; *see also In re Anderson*, 349 B.R. 448, 461-62 (E.D. Va. 2006).

The appellees based their proofs of claim on what they were told and saw concerning the Parking Policy at the time they purchased their townhomes without garages. They claimed in damages the difference in value between their townhomes with and without the two parking spaces allocated to them under the rescinded Parking Policy. The Bankruptcy Court allowed the appellees' claims based on the theory of constructive fraud.[3] The Bankruptcy Court awarded damages based on the testimony of a real estate appraiser who testified as to the difference in

---

[3] The Bankruptcy Court also held that the appellees had not proved their proofs of claim based on a theory of estoppel. The appellants also claim on appeal that after rejecting the theory of estoppel to support the creditor appellees' proofs of claim, the Bankruptcy Court erred in considering the proofs of claim under a constructive fraud theory on the grounds that such a theory was not asserted by the appellees but raised *sua sponte* by the Bankruptcy Court. Given the Court's disposition of the appeal, there is no need for the Court to rule on this alleged error.

value between a townhouse that has a dedicated parking space and one that does not, finding a 10% difference in value.

Virginia law recognizes a claim for constructive fraud, which is essentially a claim for actual fraud, but without the requirement of knowledge of the falsehood or intent to deceive on the part of the person making the false representation. Nevertheless, a constructive fraud claim must satisfy with clear and convincing evidence all the other elements of a claim for actual fraud, including (1) that the defendant made a false representation of material fact, either innocently or negligently; (2) that the defendant made the false representation with the intent that it be acted upon; (3) that the plaintiff reasonably relied on that misrepresentation; and (4) that the plaintiff suffered damage as a result of his reasonable reliance on that misrepresentation. *See Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) ( "Constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation."). After a careful review of the record, the Court finds and concludes that the creditor-appellees failed to prove the elements of constructive fraud as a matter of law.

As to the first element of their claim, a false representation, the appellees contend, and the Bankruptcy Court found, that the HOA Handbook, the painting of the curbs, and the sign threatening that violators would be towed "all gave the Non-Garage Owners the present impression that there was a Parking Policy in place at the time and that the Parking Policy consisted of two assigned spaces for Non-Garage owners." *See In re Manchester Oaks Homewoners Ass'n*, 469 B.R. 631, 641-642 (Bankr. E.D. Va. 2012). The Bankruptcy Court also found that "the [appellees] were never told that the Parking Policy could change, and by all appearances, the neighborhood and the parking arrangements did not appear to be susceptible to

change." Based on these facts, the Bankruptcy Court concluded that the HOA had, without stating that there was in place a permanent parking policy under which the non-garage townhomes were entitled to two parking spaces, impliedly represented that the Parking Policy was permanent and could not be changed. *See id.* at 642 n. 11.

As to the first element of a constructive fraud claim, a false representation, the record does not establish a false statement, expressed or implied, as to the Parking Policy. At the time the creditor-appellees purchased their townhomes, there was, in fact, an operative parking policy that allotted to the non-garage townhome owners two assigned parking spaces and the HOA intended at the time to enforce that policy. The appellees do not contend otherwise but claim that implicit in these factually true representations were other false implied representations, specifically, that the Parking Policy was permanent, legally enforceable and would not or could not be changed. First, there is no evidence that any person on behalf of the HOA stated that the creditor-appellees would have a permanent, exclusive, dedicated, non-extinguishable, unchangeable or non-defeasible right to two allocated parking spaces.[4] Second, any conclusion or inference by the purchaser of a non-garage townhome that he or she had such rights was inconsistent with and directly contradicted by the Declaration, the Deed, and the recorded deeds pertaining to a specific property, copies of which were delivered to each creditor-appellee. These documents make clear that the Parking Policy is subject to change and that the Common Areas must be shared by all residents. For this reason, it was unreasonable for any creditor-appellee to think that what was said or displayed concerning the Parking Policy meant what they

---

[4] Notably, many of the appellees testified that it was a seller, realtor, or non-party neighbor that made express representations regarding the parking policy, and no witness testified that the HOA explicitly stated that the policy was permanent and never subject to change. Jan. 26, 2012 Hr'g Tr. at 88, 93-94, 102, 109, 112-13, 130-31, 166-67. Accordingly, the Bankruptcy Court relied on the Rules and Regulations, the painted curbs, and the sign to conclude that there was an implied representation of permanency by the HOA.

now claim for the purposes of their constructive fraud claim. In short, to the extent that the creditor-appellees relied on painted curbs and parking enforcement signs to conclude that they were the beneficiaries of a legally enforceable and unchangeable parking policy, their reliance was unreasonable. *See Unit Owners Ass'n v. Gillman,* 223 Va. 752, 766, 292 S.E.2d 378, 385 (1982) ("A prospective purchaser of a unit is charged with notice of the contents of the master deed and of the bylaws..."); *Metrocall of Delaware, Inc. v. Continental Cellular Corp.,* 246 Va. 365, 373-74, 437 S.E.2d 189, 193 (1993)) ("But to establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation."); *see also Poth v. Russey,* 281 F. Supp. 2d 814, 824 (E.D. Va. 2003) (holding that plaintiff's unreasonably relied on defendants' alleged misrepresentations where the merger agreement specifically contradicted them). Moreover, to the extent that there were explicit or reasonably implied representations concerning the enforceable permanency of the Parking Policy, such representations amounted, not to statements of fact, but either future promises or representations of law, neither of which constitutes an actionable basis for a fraud claim. *See Supervalu, Inc. v. Johnson,* 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008) (citations omitted) ("Under no circumstances, however, will a promise of future action support a claim of constructive fraud."); *Hicks v. Wynn,* 137 Va. 186, 119 S.E. 133, 137 (1923) ("[M]isrepresentations of law cannot constitute fraud because the truth or falsehood of such a representation can be decided by ordinary vigilance and attention."); *Hicks,* 119 S.E. at 136 ("That a misrepresentation or misunderstanding of the law will not vitiate a contract, where there is no misunderstanding of the facts is well settled...A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly and he cannot ask the law to relieve him from the consequences."). In summary, the creditor-appellees

failed as a matter of law to establish as required that the HOA made a false representation of material fact, that the creditor-appellees reasonably relied on such a false representation or that they were damaged as a result of such reasonable reliance. The decision of the Bankruptcy Court allowing appellees' proof of claim will therefore be reversed.[5]

## IV.  CONCLUSION

For the above reasons, the Court reverses and vacates the decision of Bankruptcy Court allowing the creditor- appellees' proof of claims [Doc. No. 1-3] and remands the case to the Bankruptcy Court for further proceedings consistent with this ruling.

An appropriate Order will issue.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 19, 2013

---

[5] The appellants also dispute that the creditor- appellees adequately proved the amount of their legally recoverable damages.  Because the Court finds that the constructive fraud claims fail on other grounds, it is unnecessary to address whether the creditor-appellees adequately proved the amount of their damages.